### BOYCE v. BICKFORD et al.

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 24, 1912.)

1. BILLS AND NOTES (§ 497*) — BONA FIDE HOLDERS—BURDEN OF PROOF.

In an action on a note, a transferee thereof has the burden to show that he paid value, though the fraud relied upon by defendant arose after the making and first circulation of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1675–1687; Dec. Dig. § 497.*]

2. APPEAL AND ERROR (§ 209*)—OBJECTIONS TO TESTIMONY—NECESSITY.

A finding will not be held to be unsupported by evidence, if it is supported by unobjected, though incompetent, testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1290–1300, 1302½, 1303; Dec. Dig. § 209.*]

Appeal from District Court, Taylor County; T. L. Blanton, Judge.

Action by H. K. Bickford against G. W. Boyce and another. Judgment for plaintiff, and defendant Boyce appeals. Reversed and remanded.

J. M. Wagstaff, of Abilene, for appellant. Kirby & Davidson, of Abilene, for appellee Bickford.

SPEER, J. By this action, appellee recovered a judgment against appellant, as indorser on a promissory note, for $408, from which the defendant has appealed.

The findings of fact of the trial court, which we adopt, are as follows:

"(1) The court finds that on April 27, 1908, G. W. Boyce entered into a written contract with one W. L. Glasscock, which contract is as follows:

" 'McCauley, Texas, April 27, '08.

" 'This agreement witnesseth: That G. W. Boyce of Merkel, Texas, Taylor county, here-

inafter known as party of the first part, has bought of W. L. Glasscock, of McCauley, Fisher county, Texas, hereinafter known as party of the second part, fifty-two and seven-tenths acres out of the N. E. quarter of section 58, block 1, H. T. & B. R. R. Company, for the following consideration, ·to wit: Thirty-nine hundred and forty-two dollars and fifty cents ($3,942.50) paid and to be paid as follows: Ten hundred and fifty dollars ($1,-050), cash in hand receipt of which is hereby acknowledged and execution of first parties' obligation with vendor's lien reserve for two thousand eight hundred ninety-two dollars and fifty cents ($2,892.50) payable in one and two years from date with interest at the rate of ten (10) per cent. per annum, said notes to be delivered to the second party upon delivery of deed to above-described tract, or a satisfactory obligation for same, and it is further agreed that said first party, or have his partner, L. R. Porter, agrees to be in Mc-Cauley not less than two days in each and every week commencing June 1, 1908, until not less than half of above tract has been sold in lots or blocks, and it is further agreed said first party is to cause the above-mentioned tract to be platted, streets graded and lots staked and do whatever else is necessary to place same in proper condition for sale by lots or blocks. First party agrees also to pay to second party all cash received for the sale of the above-mentioned lots up to the extent of seven hundred and fifty dollars ($750). And the second party hereby agrees to use the said seven hundred and fifty dollars ($750) or so much thereof as becomes necessary to obtain the patent from the state for the above-described tract and then issue a general warranty deed to the above-described tract, and' the second party also agrees after the receipt of the seven hundred and fifty dollars ($750.00) cash above mentioned to release any lots upon demand upon payment of twenty-five dollars ($25) cash and twenty-five dollars ($25) first vendor lien note maturing on said lot upon each lot so released and also second party allows first party to at once take possession of above-described tract and prepare same for sale as above contemplated.

" 'All or each of the above conditions are essential parts of this contract and a failure to comply with any of them, upon demand in writing by the other party hereto, shall, at the option of the said other party, operate as a forfeiture of this contract.

" 'Witness our hand this the 27th day of April, A. D. 1908. G. W. Boyce. W. L. Glasscock.

" 'Witnesses: Lee Glasscock. C. H. [Can't make out name.]'

"(2) That on May 1, 1908, Lee Glasscock executed a written receipt to the said G. W. Boyce as follows:

" 'Received of ·G. W. Boyce the following vendor's lien notes with accrued int. all of which amounts to one thousand fifty one & 76/100 ($1,051.76) dollars, which amount is applied as credit on the land purchased in McCauley, Texas, from my father, W. L. Glasscock–per contract, & the balance to be paid per terms of contract of sale as follows:

| | |
|---|---|
| J. S. Tipton, #2, due Nov. 28, 1908, for | $112 50 |
| O. H. Ashby, #3, due Jany. 1, 1910, for | 408 00 |
| W. R. Keasler, #1, due Jany. 1, 1908, for (bal.) | 75 00 |
| W. R. Keasler, #2, due Jany. 1, 1909, for | 125 00 |
| T. B. Kerr, #2, due April 1, 1909, for | 100 00 |
| T. B. Kerr, #3, due April 1, 1910, for | 100 00 |
| E. L. Woodruff, #2, due Jany. 1, 1910, for | 100 00 |

" 'Lee Glasscock.'

"(3) That on June 6, 1908, the said W. L. Glasscock wrote to the said G. W. Boyce, the following letter:

" 'McCauley, Texas, June 6, 1908.

" 'Mr. G. W. Boyce, Merkel, Texas—Dear Sir: On the 27th day of April, 1908, you entered into a contract with me to purchase from me (52.7) fifty-two ·and 7/10 acres of land, out of the N. E. ¼ of section 58, block 1, H. & T. B. survey, in Fisher county. One of the conditions of the contract being "that you or your partner, L. R. Porter, were to be in McCauley not less than two days in each and every week, commencing June 1, 1908." This part of your agreement with me is an essential part of the contract, and you have utterly failed to comply with it, and I hereby notify you that this failure on your part operates as a forfeiture and I will proceed at once to take charge of the 52.7 acres of land above referred to. Yours very truly, W. L. Glasscock.'

"(4) That at the time said notes mentioned in finding No. 2 were delivered by the said Boyce to the said Lee Glasscock it was understood and agreed between the parties that the same should be held in escrow, and upon the consummation of the said deal should be filed as a cash payment thereon, of which plaintiff had no notice.

"(5) That after receiving the letter described in finding No. 3 the said G. W. Boyce took no further action with the said W. L. Glasscock or the said Lee Glasscock, but immediately thereafter placed the matter in the hands of his attorney.

"(6) That the plaintiff brought this suit upon, and introduced in evidence on the trial of this case, the following note: 'No. 3, $408.00. Anson, Texas, April 1, 1907. On or before Jan. 1, 1910, after date, I promise to pay to A. C. Sears and Arthur Sears, or order, the sum of four hundred and eight & no/100 dollars, with interest thereon from date until paid at the rate of eight per centum per annum, the interest payable annually as it accrues, both principal and interest payable at Anson, Texas, for value received. This note is given in part payment for a certain lot or parcel of land situated in Jones county, Texas, and being 127 acres

out of N. W. corner of sec. 12, blk. 17, T. & P. R. R. Co. land and the same land this day conveyed to me by A. C. and Arthur Sears, to secure the payment of which a vendor's lien is retained in said conveyance. All past-due interest on this note shall bear interest from the maturity thereof until paid at the rate of eight per centum per annum. It is understood and agreed that failure to pay this note or any installment of interest thereon when due shall at the election of the holder of them, or any of them, mature all notes this day given by me to said A. C. and Arthur Sears, in payment for said property. And I hereby specially agree that if this note is placed in the hands of an attorney for collection, or if collected by suit, or through the probate court, to pay ten per cent. additional on the principal and interest due as attorney's fees. O. H. Ashby.' With indorsements as follows: 'Arthur Sears. A. C. Sears. G. W. Boyce. Lee Glasscock.' Said note coming from the possession of the plaintiff, and the plaintiff having agreed to pay his attorney the 10 per cent. stipulated therein, which amount the court finds is reasonable.

"(7) That prior to the writing of the letter of date June 6, 1908, the said W. L. Glasscock made no written or other demand upon the said G. W. Boyce with reference to the compliance with said contract.

"(8) That on the said May 1, 1908, at the time the said G. W. Boyce delivered the said note herein sued upon to the said Lee Glasscock, there were no indorsements on same, other than Arthur Sears, A. C. Sears, and the said G. W. Boyce, whose indorsement was placed thereon at the time, and the further indorsement, 'Interest paid to Jan. 1, 1908.'

"(9) That the said G. W. Boyce filed no suit whatever concerning the said note and placed no lis pendens, either in Jones county or any other county."

Upon these findings of fact, the trial court made the following conclusion of law: "I conclude, as matter of law, that the note itself carries with it the presumption that the same was received by the plaintiff upon a valuable consideration, without notice, and before its maturity, the burden of proof being upon the defendants herein to show that the plaintiff had some notice of the rights existing between the said G. W. Boyce and the said W. L. Glasscock, because of the fact that there was no fraud connected with the inception of the note, and at the time when said note was placed in circulation by the maker to the payee in said note; the fraud having occurred subsequent to that time between the said G. W. Boyce, W. L. Glasscock, and Lee Glasscock, and them only.

[1] The above conclusion is predicated upon the finding that the fraud connected with the transaction occurred subsequent to the making and first circulation of the note. This, we think, is immaterial. The principle that fraud in the original inception of a note, or in its utterance, imposes upon the holder of negotiable paper the burden of proving he paid value therefor is applicable, we think, to a transaction like this. So far as appellee is concerned, the facts show the instrument sued on was fraudulently put in circulation; and every reason, therefore, exists why the same rule should apply as though the fraud had been in the inception of the note, and suit had been brought by a subsequent holder. In Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996, it is said: "To let in a defense by the maker against the assignee, the maker must first prove that there was fraud or illegality in the inception of the instrument, or show circumstances which raise a stronger suspicion of fraud or illegality. When this is done, it will devolve upon the holder to show that he acquired the instrument bona fide, for value, in the usual course of business, while current, and under circumstances which create no presumption that he knew the facts which impeach its validity. * * * When he has shown that he has paid value in the usual course of business, and that circumstances attending the transfer cast no suspicion upon the fairness of his intent, he need go no further; and it then devolves upon the defendant to show notice to him, in order to defeat a recovery." The same rule applies where the fraud is involved in putting the instrument into circulation. Hart v. West, 91 Tex. 184, 42 S. W. 544; 1 Daniel on Negotiable Instruments, par. 817.

[2] It is insisted by cross-assignment that the finding of fact, to the effect that the note in controversy was fraudulently put in circulation by the stakeholder, Lee Glasscock, is unsupported by the evidence, because the receipt given therefor, which is alleged to be contractual in its nature, shows the note was delivered by appellee as a part of the cash payment for the land purchased, and that the oral testimony, showing to the contrary, was therefore not to be considered. The answer to this contention is that no objection appears to have been made to such oral testimony, in the absence of which the finding of fact undoubtedly is supported by it.

Because the court erred in his conclusion as to the burden of proof, and because the findings, therefore, do not support the judgment rendered, the judgment of the district court is reversed, and the cause remanded for another trial.

Reversed and remanded.